IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Case No. 7:24-1101

MUAMMER SALEH, TAREQ
ALSAEDE, HUBERT TOBACCO INC,
53 MINI MART & TOBACCO 2 LLC,

*Plaintiffs*,

v.

CHRISTOPHER THOMAS, officially,
as the Sheriff of Onslow County and in
his individual capacity; JOHN DOE
SURETY, as surety for the Sheriff of
Onslow County; Lt. JAY FLOYD in
his individual and official capacity;
and Sgt. RUBIN JIMENEZ in his
individual and official capacity,

*Defendants*.

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF**

## NATURE OF THE CASE

1. Plaintiffs are two individuals and two corporate entities that own and operate convenience stores and tobacco shops in Onslow County.

2. The individual Plaintiffs are United States citizens and have both resided in Onslow County for at least thirty years.

3. Plaintiffs sell a wide variety of products, including tobacco, groceries, drinks and, previously, delta-9 hemp products.

4. Like many others, Plaintiffs have sold hemp in Onslow County since at least 2021 without interference from law enforcement.

1

5. Hemp is not a controlled substance in North Carolina.

6. Accordingly, hemp products that contain at or below 0.3 percent delta-9 THC may be lawfully bought and sold, without restriction. *See* N.C. Gen. Stat. §§ 90-87(13a)-(13b), 90-94(b)(2).

7. At all times relevant to this Complaint, Plaintiffs purchased their hemp products from national wholesalers.

8. At the time of purchase, the national wholesalers provided Plaintiffs with Certificates of Analysis ("COAs") confirming that their products had tested at or below 0.3 percent delta-9 THC and were therefore legal under state and federal law.

9. Moreover, each product was individually labeled and identified as containing "less than .3% [delta]-9 THC".



*Example packaging of hemp product sold at Plaintiffs' stores.*

10. Still, on April 3, 2024, the Onslow County Sheriff's Office led an operation which involved numerous law enforcement agencies and

2

seized millions of dollars' worth of hemp product and money from 71 different stores across Onslow and New Hanover Counties.

11.    These raids occurred without warning and were led by officers in SWAT gear and often with guns drawn.



*Officers entering a convenience store in Onslow County on April 3, 2024, prior to disabling surveillance cameras.*

12.    No officers were wearing body cameras during these raids. The officers also shut down the surveillance cameras of each store they entered, so their seizures would not be recorded.

13.    In many instances, stores were left in disarray after officers ransacked the shelves and seized products without any attempt to identify their legality.



*Picture of a store in Onslow County after it was searched on April 3, 2024.*

14. At many stores, including Plaintiffs', officers seized or broke into safes, and then seized cash and financial documents from inside.

15. Plaintiffs were not charged criminally at the time of these raids and seizures.

16. Two months later, Lt. Jay Floyd of the Onslow County Sheriff's Office, who helped lead and orchestrate the raids, stated that the goal was to shut down Plaintiffs' lawful businesses and "run them out" of town.

4

17. Lt. Floyd stated that any hemp product that contained multiple types of cannabinoids would be seized—without any attempt to determine if the products were lawful.

18. Lt. Floyd further stated that all hemp products, regardless of COAs or packaging identifying the product as legal, were, in his view, "too close to the line" of legality and would continue to be seized.

19. Undersigned counsel responded to Lt. Floyd and Sheriff Thomas in writing and explained that Plaintiffs were selling hemp product that is lawful under both state and federal law. (Ex. A, Onslow County Letter).

20. Counsel informed the Sheriff's Office that Plaintiffs had purchased this product from wholesalers who had provided them COAs proving the product was lawful, and that the product's packaging stated that the product was lawful. *Id.*

21. Counsel explained that Plaintiffs had always intended to operate within the law and that, for the time being, Plaintiffs would voluntarily stop selling any delta-9 hemp products until their legality was reaffirmed. *Id.*

22. Counsel further explained that any attempt to charge Plaintiffs criminally with possession or sale of an illegal substance would require probable cause that Plaintiffs knew the hemp product was in fact illegal. *Id.*

5

23. Relatedly, counsel reminded the Sheriff's Office that any attempts to bring criminal charges without probable cause could give rise to civil claims for malicious prosecution, as well as claims for violation of the North Carolina Constitution. *Id.*

24. Nevertheless, on November 8, 2024, seven months after the seizures discussed above, the Onslow Sheriff charged Plaintiffs and approximately 15 others with criminal offenses related to the possession and sale of lawful hemp product.

25. In response to these illegal raids, seizures and arrests, Plaintiffs bring this lawsuit seeking damages and permanent injunctive relief to protect their Constitutional rights to operate a business and to be free from illegal harassment, search, seizure, and prosecution.

## JURISDICTION

26. This Court has original subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) because claims asserted by Plaintiffs arise under the laws of the United States and seek redress for rights guaranteed by the United States Constitution and deprived under color of state law.

27. Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any and all North Carolina state law claims and causes of action which derive from the same nucleus of

6

operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

**VENUE**

28. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

**PARTIES**

29. Defendant Christopher Thomas ("Sheriff Thomas") is the elected Sheriff of Onslow County, North Carolina, and is sued in his official capacity as the Sheriff of Onslow County. Defendant Thomas is also sued in his individual capacity for his direct involvement in the law enforcement action described herein.

30. Defendant Sheriff Thomas, had, at the time of the unlawful arrests and seizures, waived governmental or sovereign immunity from the state law tort claims in this case pursuant to N.C.G.S. § 153A-435, either by participating in a government risk pool or through purchasing commercial insurance that will indemnify him and his agents for any judgment against him or his agents named in this action. Defendant Sheriff Thomas has also waived immunity for the independent reason that he purchased an official bond.

31. Defendant John Doe Surety, as surety for the Sheriff of Onslow County, is named as a party to this action as the entity from whom Defendant Sheriff Thomas purchased a surety bond pursuant to N.C.G.S. §§ 58-

7

76-5 and 162-8. Because Sheriff Thomas is covered by this surety bond, he has waived immunity.

32. Defendant Jay Floyd is a Lieutenant for the Onslow County Sheriff's Office.

33. Defendant Rubin Jimenez is a Sergeant for the Onslow County Sheriff's Office.

34. Plaintiff Muammer Saleh is a resident of Onslow County.

35. Plaintiff Tareq Alsaede is a resident of Onslow County.

36. Plaintiff Hubert Tobacco Inc is a corporation doing business in Onslow County.

37. Plaintiff 53 Mini Mart & Tobacco 2 LLC is a corporation doing business in Onslow County.

## FACTS

**Plaintiff Tareq Alsaede**

38. Plaintiff Tareq Alsaede is an owner of 53 Mini Mart & Tobacco ("53 Mini Mart").

39. Mr. Alsaede has lived in the United States since 1990.

40. Mr. Alsaede graduated from UNC-Pembroke.

41. Prior to this incident Mr. Alsaede had never been arrested.

42. On April 3, 2024, Onslow County Sheriff's deputies raided 53 Mini Mart.

8

43. The raid and seizure were orchestrated and led by Onslow County Sheriff Chris Thomas and Lt. Jay Floyd.

44. The Onslow County Sheriff's Office seized thousands of dollars' worth of legal hemp product from 53 Mini Mart.

45. On or about June 17, 2024, undersigned counsel informed Sheriff Thomas and Lt. Floyd that Plaintiffs had purchased lawful hemp product from national wholesalers, that the product was marked as legal under federal and state law, and that this product was accompanied by COAs which proved the product tested under the lawful limit.

46. Undersigned counsel also informed Sheriff Thomas and Lt. Floyd that because Plaintiffs relied on the wholesalers' representations that the product was legal, the markings on the product, and the COAs proving the product tested below the lawful limit, the Sheriff's office lacked probable cause to prove the Plaintiffs' intent to sell or possess any unlawful substance.

47. Still, on November 8, 2024, Onslow County Sheriff's Deputies, at the direct instruction of Sheriff Thomas and Lt. Floyd, charged Tareq Alsaede with numerous criminal offenses related to the sale and possession of hemp.

**Plaintiff Muammer Saleh**

48. Plaintiff Muammer Saleh is a resident of Onslow County.

49. On November 8, 2024, at approximately 8:30 a.m. Onslow County Sheriff's deputies arrived at Mr. Saleh's home.

50. The deputies were directed and supervised by Onslow County Sgt. Rubin Jimenez.

51. The deputies had warrants for and pictures of individuals they intended to arrest that day for sale of hemp product.

52. The deputies did not have a picture of Mr. Saleh or a warrant for his arrest.

53. At the time the deputies arrived Mr. Saleh was wearing only a towel around his waist.

54. As he opened the door, the deputies, under the direction of Sgt. Jimenez, immediately handcuffed Mr. Saleh. The deputies then took Mr. Saleh to his bedroom and forced him to undress in front of them.

55. The deputies then asked for his identification.

56. Mr. Saleh provided the deputies with his identification.

57. He was then forced to remain handcuffed for approximately 30 minutes.

58. The deputies then returned to his house, removed the handcuffs, and left.

10

59. Mr. Saleh was never arrested or charged with any offense.

**53 Mini Mart & Tobacco**

60. Plaintiff 53 Mini Mart & Tobacco ("53 Mini Mart") is a store located in Onslow County.

61. On April 3, 2024, Onslow County Sheriff's deputies raided 53 Mini Mart.

62. The raid and seizure were personally orchestrated and led by Onslow County Sheriff Chris Thomas and Lt. Jay Floyd.

63. Prior to the raid, Onslow County Sheriff's deputies visited the store and observed hemp product for sale. At that time, the deputies were aware that the hemp product was purchased from national wholesalers, that the product was marked as legal under federal and state law, and that the product was accompanied by COAs which proved the product tested under the lawful limit for delta-9 THC.

64. Still, on April 3, 2024, the Onslow County Sheriff's Office seized thousands of dollars' worth of lawful hemp product from 53 Mini Mart.

65. Two months later, Lt. Jay Floyd of the Onslow County Sheriff's Office, who helped lead the raids, stated that the goal was to shut down Plaintiffs' lawful businesses and "run them out" of town.

66. On or about June 17, 2024, undersigned counsel wrote Sheriff Thomas and Lt. Floyd and explained that because Plaintiffs relied on the

11

wholesalers' representations of the legality of the product, the markings on the products, and the COAs proving the product tested below the lawful limit, the Sheriff's office lacked probable cause that Plaintiffs intended to sell or possess any unlawful substance. As a result, the Sheriff's office lacked probable cause to seize the product, or to charge Plaintiffs with any crime.

67. Counsel further explained that intentionally "shutting down" Plaintiffs' businesses would violate our state constitution's "fruits of their labor" provision.

68. Plaintiffs, on October 15, 2024, requested that the Onslow County Sheriff's office return the lawful hemp product, or produce test results proving that the product had in fact tested over the legal limit.

69. Defendants, to this day, have still not returned any hemp product to this store, nor have they produced test results proving that the product tested over the legal limit.

**Plaintiff Hubert Tobacco**

70. Plaintiff Hubert Tobacco Inc. ("Hubert Tobacco") is a store located in Onslow County.

71. On April 3, 2024, Onslow County Sheriff's deputies raided Hubert Tobacco.

12

72. The raid and seizure were personally orchestrated and led by Onslow County Sheriff Chris Thomas and Lt. Jay Floyd.

73. Prior to the raid, Onslow County Sheriff's deputies visited the store and observed hemp product for sale. At that time, the deputies were aware that the hemp product was purchased from national wholesalers, that the product was marked as legal under federal and state law, and that the product was accompanied by COAs which proved the product tested under the lawful limit for delta-9 THC.

74. Still, on April 3, 2024, the Onslow County Sheriff's Office seized approximately $3,000 in cash and approximately $20,000 worth of lawful hemp product from Hubert Tobacco.

75. Two months later, Lt. Jay Floyd of the Onslow County Sheriff's Office, who helped lead the raids, stated that the goal was to shut down Plaintiffs' lawful businesses and "run them out" of town.

76. On or about June 17, 2024, undersigned counsel wrote Sheriff Thomas and Lt. Floyd and explained that because Plaintiffs relied on the wholesalers' representations of the legality of the product, the markings on the products, and the COAs proving the product tested below the lawful limit, the Sheriff's office lacked probable cause that Plaintiffs intended to sell or possess any unlawful substance. As a

13

result, the Sheriff's office lacked probable cause to seize the product, or to charge Plaintiffs with any crime.

77. Counsel further explained that intentionally "shutting down" Plaintiffs' businesses would violate our state constitution's "fruits of their labor" provision.

78. Plaintiffs, on October 15, 2024, requested that the Onslow County Sheriff's office return the lawful hemp product, or produce test results proving that the product had in fact tested over the legal limit.

79. Defendants, to this day, have still not returned any hemp product to this store, nor have they produced test results proving that the product tested over the legal limit.

## CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**Illegal Seizure in Violation of the Fourth Amendment**
**under 42 U.S.C § 1983**

80. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

81. This claim is brought by Muammer Saleh against Onslow County Sgt. Rubin Jimenez.

82. Sgt. Jimenez is sued under this claim in his individual capacity.

14

83. Sgt. Jimenez is sued for violating Mr. Saleh's constitutional rights under the Fourth Amendment and is liable for damages under 42 U.S.C § 1983.

84. On November 8, 2024, at approximately 8:30 a.m. Onslow County Sheriff's Deputies arrived at Mr. Saleh's home.

85. The deputies were directed and supervised by Onslow County Sgt. Rubin Jimenez.

86. The deputies had warrants for and pictures of individuals they intended to arrest that day for sale of hemp product.

87. The deputies did not have a picture of Mr. Saleh or a warrant for his arrest.

88. Still, the deputies, at Sgt. Jimenez's instructions, seized and handcuffed Mr. Saleh outside his home.

89. The deputies then entered his home without a warrant or consent.

90. The deputies then took Mr. Saleh to his bedroom and forced him to undress in front of them.

91. The deputies then asked for his identification.

92. Mr. Saleh provided the deputies with his identification.

93. He was then forced to remain handcuffed for approximately 30 minutes.

94. The deputies then removed his handcuffs and left.

95. Muammer Saleh was never charged with any offense.

96. As a direct and proximate result of these officers' acts, Plaintiff was illegally detained and handcuffed, and his home was illegally entered, causing the injuries and damages described herein.

**SECOND CLAIM FOR RELIEF**
**Violation of Art. I §§ 1 and 19 of the North Carolina Constitution**
**("Fruits of Their Own Labor")**

97. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

98. This claim is brought by Plaintiffs 53 Mini Mart, Hubert Tobacco, and Tareq Alsaede, against Sheriff Thomas and Lt. Floyd, who are sued under this claim in their official capacities as well as their individual capacities based on their own conduct.

99. This claim is also brought against Sheriff Thomas for the acts of the employees and officers of the Onslow County Sheriff's Office.

100. The Onslow County Sheriff's Office, on information and belief, has waived immunity for this claim on behalf of its employees acting in their official capacities.

101. Section 1 of the North Carolina Constitution declares that North Carolinians are entitled to "the enjoyment of the fruits of their own

16

labor." And Section 19 provides that no North Carolinian will be "deprived of his life, liberty, or property, but by the law of the land."

102. Together, these provisions protect "engaging in any legitimate business, occupation, or trade" unless "the promotion or protection of the public health, morals, order, or safety, or the general welfare makes [burdensome state action] reasonably necessary." *Kinsley v. Ace Speedway Racing, Ltd.*, 386 N.C. 418, 424, 904 S.E.2d 720, 726 (2024).

103. Action that interferes with a "legitimate business" is therefore unconstitutional unless it (1) serves a "proper governmental purpose" (2) by way of "reasonable means." *Id.*

104. Onslow County Sheriff's employees, including Sheriff Thomas and Lt. Floyd, expressly, arbitrarily, and without legal justification sought to force Plaintiffs to close their businesses and attempted to (in their own words) run them "out of town."

105. Defendants were aware that Plaintiffs had purchased lawful hemp product from national wholesalers, that the product was marked as legal under federal and state law, and that this product was accompanied by COAs which proved the product tested under the lawful limit.

106. For years, Plaintiffs sold lawful hemp products without fear of enforcement or retribution by Defendants.

17

107. Without warning, on April 3, 2024, Defendants raided Plaintiffs' stores and seized thousands of dollars' worth of cash and lawful hemp products.

108. The Defendants targeted Plaintiffs' businesses, as well as other individuals of Middle Eastern descent, while permitting other stores in Onslow County to continue to sell the very same delta-9 hemp products that were seized from Plaintiffs' stores.

109. For example, Goode Hemp, which is located in Onslow County and is owned by two Caucasian individuals, who are not of Middle Eastern descent, continues to sell the very same delta-9 hemp products that were seized from Plaintiffs' stores.

110. Two months after these raids, Onslow Sheriff's office Lt. Jay Floyd, who helped lead the raids, stated that the goal was to shut down Plaintiffs' lawful businesses and "run them out" of town.

111. Lt. Floyd stated that any hemp product that contained multiple types of cannabinoids would be seized—without any attempt to determine if the various combined ingredients were lawful.

112. He further stated that all hemp products, regardless of COAs or packaging identifying the product as legal, were "too close to the line" of legality and would continue to be seized.

18

113. Undersigned counsel responded to Lt. Floyd in writing (Ex. A, Onslow County Letter) and explained that Plaintiffs were selling hemp, a lawful product under federal and state law.

114. Counsel explained that because Plaintiffs relied on the wholesalers' representations of the legality of the product, the markings on the products, and the COAs proving the product tested below the lawful limit, the Sheriff's office lacked probable cause to prove the Plaintiffs' intent to sell or possess any unlawful substance. As a result, the Sheriff's office lacked probable cause to seize the product, or to charge Plaintiffs with any crime.

115. Counsel further explained that intentionally "shutting down" Plaintiffs' businesses would violate our state constitution's "fruits of their labor" provision.

116. Plaintiffs, on October 15, 2024, requested that the Onslow County Sheriff's office return the lawful hemp product, or produce test results proving that the product had in fact tested over the legal limit.

117. Defendants, to this day, have still not returned any of Plaintiffs' hemp product, nor have they produced test results proving that the product tested over the legal limit.

118. Instead, Defendants have continued to send Sheriff's deputies to monitor Plaintiffs' stores and have insisted that they will continue to enforce against Plaintiffs if they sell delta-9 hemp product.

119. Through a persistent pattern of harassment, unlawful seizures and unlawful arrests, Defendants have attempted to force Plaintiffs to cease selling lawful delta-9 hemp product, permanently damaging their businesses—while permitting other stores in the County to sell the exact same product that was seized from Plaintiffs' stores.

120. As a direct and proximate result of the officers' conduct, Plaintiffs have been forced to stop selling lawful delta-9 hemp product, resulting in significant pecuniary damages.

121. Plaintiffs do not have an adequate alternative state remedy, and therefore, enjoy a direct cause of action for the violation of their rights as guaranteed by the North Carolina Constitution.

**THIRD CLAIM FOR RELIEF**
**Violation of Art. I § 19 of the North Carolina Constitution**
**("Selective Enforcement")**

122. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

123. This claim is brought by Plaintiffs 53 Mini Mart, Hubert Tobacco, and Tareq Alsaede, against Sheriff Thomas and Lt. Floyd, who are sued

20

under this claim in their official capacities as well as their individual capacities based on their own conduct.

124. This claim is also brought against Sheriff Thomas for the acts of the employees and officers of the Onslow County Sheriff's Office.

125. The Onslow County Sheriff's Office, on information and belief, has waived immunity for this claim on behalf of its employees acting in their official capacities.

126. Article I, section 19 of the North Carolina Constitution provides that "[n]o person shall be denied the equal protection of the laws[.]" That provision bars enforcement actions that are "motivated by a discriminatory purpose and ha[ve] a discriminatory effect." *Kinsley*, 386 N.C. at 428, 904 S.E.2d at 728-29.

127. A "discriminatory purpose" is one based on an "unjustifiable standard" or "arbitrary classification" like "race, religion, or the exercise of the claimant's constitutional rights." *Id.*

128. A "discriminatory effect" results when a claimant "has been singled out and treated differently" compared "to persons similarly situated." *Id.*

129. The Defendants violated Plaintiffs' equal-protection rights when they singled them out for enforcement and prosecution based on:

    a.    Their Middle Eastern heritage; *and/or*

21

b.   A desire to prevent them from exercising their constitutional rights; specifically their "right to earn a living" under the state's "fruits-of-their-labor" clause.

130. The Defendants knew that other, similarly situated businesses were—and are still—selling hemp products, but chose to single out Plaintiffs' businesses.

131. The Defendants targeted Plaintiffs' businesses, as well as other individuals of Middle Eastern descent, while permitting other stores in Onslow County to continue to sell the very same delta-9 hemp products that were seized from Plaintiffs' stores.

132. As a direct and proximate result of Defendants' conduct, Plaintiffs have been forced to stop selling lawful hemp products, resulting in Plaintiffs' pecuniary damages.

133. Plaintiffs do not have an adequate alternative state remedy, and therefore, enjoy a direct cause of action for the violation of their rights as guaranteed by the North Carolina Constitution.

**FOURTH CLAIM FOR RELIEF**
**Common Law Negligence**

134. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

22

135. This claim is brought by Plaintiffs 53 Mini Mart, Hubert Tobacco, Muammer Saleh and Tareq Alsaede, against Sheriff Thomas, Lt. Floyd, and Sgt. Jimenez, who are sued under this claim in their official capacities as well as their individual capacities based on their own conduct.

136. Sheriff Chris Thomas, on information and belief, has waived immunity for this claim on behalf of the Sheriff's Office and its officers acting in their official capacities.

137. Sheriff Thomas, through his officers, had the following duties:

    a.    to ensure that stores were not unlawfully searched;

    b.    to ensure that product and cash was not unlawfully seized;

    c.    to ensure that only reliable sources of evidence were used in criminal prosecutions;

    d.    to ensure that only reliable and accurate tests were used when examining the legality of hemp product;

    e.    to not omit material evidence (including exculpatory evidence) from magistrates, district attorneys and the grand jury;

    f.    to exercise reasonable care when engaging in criminal investigations; and

    g.    to include accurate information in reports describing evidence in their possession.

23

138. Sheriff Thomas, through his officers, was negligent and breached duties owed to Plaintiffs in the following respects:

    a.    The officers wrongfully caused Plaintiffs' stores to be unlawfully searched and their product to be unlawfully seized;

    b.    The officers omitted key information to the magistrate and district attorney during the course of their investigation and when seeking to press charges;

    c.    The officers used a gas chromatography test which may have converted lawful delta-9 hemp product into unlawful product; and

    d.    In other respects, to be proved through discovery and at trial.

139. Defendant Sheriff Thomas, by and through his agents, was negligent and breached each of the duties outlined above, resulting in Plaintiffs being deprived of their right to be free from wrongful arrest and prosecution.

140. Sheriff Thomas, as the principal for his agents, including Lt. Floyd, and Sgt. Jimenez, are responsible under *respondeat superior* for the injuries caused by the acts and omissions alleged herein.

141. The defendant officers acted within the course and scope of their employment in the acts and omissions alleged herein.

24

142. As a direct and proximate result of the negligence of the Sheriff Thomas, through his officers, Plaintiffs were wrongfully arrested, detained and prosecuted and suffered physical, emotional and pecuniary damages.

**FIFTH CLAIM FOR RELIEF**
**Injunctive Relief Against Onslow County Sheriff Chris Thomas**

143. Plaintiffs re-allege and incorporate the preceding paragraphs as if set forth herein.

144. All Plaintiffs bring this claim for permanent injunctive relief against Onslow County Sheriff Chris Thomas. Sheriff Thomas is sued for injunctive relief in his official capacity.

145. As alleged herein, Plaintiffs have suffered and will continue to suffer unconstitutional deprivations of their liberty interests caused Sheriff Thomas's policies and procedures related to hemp product.

146. Specifically, Sheriff Thomas has instituted a policy of seizing lawful hemp product and arresting and charging individuals for the possession or sale of lawful hemp product.

147. Moreover, when testing lawful hemp product, Sheriff Thomas, and the employees of the Onslow County Sheriff's Office, are using a process known as "gas chromatography" to test hemp product.

148. During the gas-chromatography process, the product being tested is heated to a temperature that changes its molecular structure and, as a result, increases the amount of THC present.

149. In other words, Sheriff Thomas's testing method risks changing a legal product into an illegal one.

150. By comparison, "liquid chromatography" tests products in the state they are bought and sold in.

151. "Liquid chromatography" testing is reliable, cost-effective, and readily available. The Onslow County Sheriff's Office is aware of this testing method, but refuses to use it.

152. Plaintiffs are eager to continue selling lawful hemp products, but are prevented from doing so by the Onslow Sheriff.

153. The deprivations of liberty interests suffered by Plaintiffs constitute irreparable injury such that remedies available at law, including monetary damages, are inadequate to fully compensate for such injury.

154. Sheriff Thomas's unconstitutional policies are a continuing policy and practice and therefore subject Plaintiffs, as well as the public in North Carolina at large, to ongoing risk of deprivations of their constitutional rights.

155. This ongoing risk is evidenced by the fact that Lt. Floyd has stated that the Onslow Sheriff's Office will continue to seize hemp products, arrest

individuals for selling hemp, and will test the product using gas chromatography.

156. Considering the balance of hardships between the parties, and Sheriff Thomas's indifference towards the egregious violations of Plaintiffs' liberty interests, a permanent injunction against the Sheriff Thomas is warranted.

157. Specifically, the permanent injunction should require Sheriff Thomas and his employees to immediately:

a. Stop seizing hemp product;

b. Stop arresting individuals for selling or possessing hemp;

c. And to test hemp product only using liquid chromatography, or another method that does not alter the product's THC content.

158. Such a permanent injunction would serve the public interest by preventing Sheriff Thomas from continuing to subject Plaintiffs and the public to unconstitutional deprivations of liberty.

**SIXTH CLAIM FOR RELIEF**
*Respondeat Superior*

159. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

160. This claim is brought by Plaintiffs against Sheriff Thomas, Lt. Floyd, and Sgt. Jimenez, who are sued under this claim in their official capacities.

161. In committing the acts alleged in the previous paragraphs, these officer defendants were employees or agents of Onslow County Sheriff Thomas, acting within the scope of their employment.

162. Sheriff Thomas, on information and belief, has waived immunity for this claim on behalf officers acting in their official capacities.

163. Therefore, Sheriff Thomas is liable as principal for the torts committed by its agents in the course and scope of their employment under the doctrine of *respondeat superior*.

## SEVENTH CLAIM FOR RELIEF
### Indemnification

164. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

165. This claim is brought by Plaintiffs against Sheriff Thomas, Lt. Floyd, and Deputy Jimenez, who are sued under this claim in their individual and official capacities.

166. Sheriff Thomas is permitted by state law and, on information and belief, has elected to pay any final judgment against an employee that

28

results from an act done or omission made in the scope and course of his or her employment with the Onslow County Sheriff's Office.

167. In committing the acts alleged in this Complaint, the named officer defendants were at all times employees of the Onslow County Sheriff's Office and acting within the course and scope of their employment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and order relief as follows:

A. Compensatory damages against all Defendants, jointly and severally;

B. Punitive damages against the individual Defendants, jointly and severally;

C. Pre-judgment and post-judgment interest and recovery of costs, as well as reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 and any other applicable laws;

D. Injunctive relief against the Onslow County Sheriff;

E. Any other and further relief the Court deems equitable and just.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury of all issues in this matter so triable pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted this the 6th day of December 2024.

/s/ Abraham Rubert-Schewel
Abraham Rubert-Schewel (NCSB #: 56863)
Email: schewel@tinfulton.com
TIN FULTON WALKER & OWEN PLLC
119 Orange Street, Floor 2
Durham, NC 27701
Telephone: (919) 307-8400

*Counsel for Plaintiffs*

30