IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Case No. 7:24-1101

| | |
|---|---|
| SHELLY CHAMBERS, Administrator of the Estate of MUAMMER SALEH, and HUBERT TOBACCO INC, <br><br> *Plaintiffs*, <br><br> v. <br><br> CHRISTOPHER THOMAS, officially, as the Sheriff of Onslow County and in his individual capacity; THE OHIO CASUALTY INSURANCE COMPANY as surety for the Sheriff of Onslow County; Lt. JAY FLOYD in his individual and official capacity; and Sgt. RUBIN JIMENEZ in his individual and official capacity, <br><br> *Defendants*. | **AMENDED COMPLAINT** |

## NATURE OF THE CASE

1.     Plaintiff Shelly Chambers is the duly appointed Administrator of the Estate of Muammer Saleh ("Saleh Estate").

2.     Mr. Saleh passed away on or about January 23, 2025.

3.     Prior to his death, Mr. Saleh was a partial owner of Plaintiff Hubert Tobacco, Inc ("Hubert Tobacco").[1]

---

[1] Hereinafter, the Saleh Estate and Hubert Tobacco are referred to collectively as "Plaintiffs".

4. Mr. Saleh was a United States citizen of Middle Eastern descent and resided in Onslow County for over thirty years.

5. Plaintiffs operate convenience stores and tobacco shops in Onslow County.

6. Plaintiffs sell a wide variety of products, including tobacco, groceries, drinks and, previously, hemp products.

7. Like many others, Plaintiffs have sold hemp in Onslow County since at least 2021 without interference from law enforcement.

8. Hemp is not a controlled substance in North Carolina.

9. Accordingly, hemp products that contain at or below 0.3 percent delta-9 THC may be lawfully bought and sold, without restriction. *See* N.C. Gen. Stat. §§ 90-87(13a)-(13b), 90-94(b)(2).

10. At all times relevant to this Complaint, Plaintiffs purchased their hemp products from national wholesalers.

11. At the time of purchase, the national wholesalers provided Plaintiffs with Certificates of Analysis ("COAs") confirming that their products had tested at or below 0.3 percent delta-9 THC and were therefore legal under state and federal law.

12. Moreover, each product was individually labeled and identified as containing "less than .3% [delta]-9 THC".

2



*Example packaging of hemp product sold at Plaintiffs' stores.*

13. Still, on April 3, 2024, the Onslow County Sheriff's Office led a vast operation to seize millions of dollars' worth of lawful hemp products and money from 71 different stores across Onslow and New Hanover Counties.

14. These raids occurred without warning and were led by officers in SWAT gear and often with guns drawn.



*Officers entering a convenience store in Onslow County on April 3, 2024, prior to disabling surveillance cameras.*

15. No officers were wearing body cameras during these raids. The officers also shut down the surveillance cameras of each store they entered, so their seizures would not be recorded.

16. In many instances, stores were left in disarray after officers ransacked the shelves and seized products without any attempt to identify their legality.



*Picture of a store in Onslow County after it was searched on April 3, 2024.*

17. At many stores, including Plaintiffs', officers took or broke into safes in order to seize cash and financial documents from inside.

18. Plaintiffs were not charged criminally at the time of these raids and seizures.

19. Two months after the raids, Lt. Jay Floyd of the Onslow County Sheriff's Office, who helped lead and orchestrate the raids, stated that the goal was to shut down Plaintiffs' lawful businesses and "run them out" of town.

20. Lt. Floyd stated that any hemp product that contained multiple types of cannabinoids would be seized—without any attempt to determine if the products were lawful.

21. Lt. Floyd further stated that all hemp products, regardless of COAs or packaging identifying the product as legal, were, in his view, "too close to the line" of legality and would continue to be seized.

22. Undersigned counsel responded to Lt. Floyd and Sheriff Thomas in writing and explained that Plaintiffs were selling hemp products that were lawful under both state and federal law. (Ex. A, Onslow County Letter).

23. Counsel informed the Sheriff's Office that Plaintiffs had purchased these products from wholesalers who had provided them COAs (test results) proving the products were lawful, and that the products' packaging stated that the products were lawful. *Id.*

24. Counsel explained that Plaintiffs had always intended to operate within the law and that, for the time being, Plaintiffs would stop selling any hemp products until their legality was reaffirmed. *Id.*

25. Counsel further explained that any attempt to charge Plaintiffs criminally with possession or sale of an illegal substance would require probable cause that Plaintiffs knew the hemp product was in fact illegal. *Id.*

6

26. Relatedly, counsel reminded the Sheriff's Office that any attempts to bring criminal charges without probable cause could give rise to civil claims for malicious prosecution, as well as claims for violation of the North Carolina Constitution. *Id.*

27. Nevertheless, on November 8, 2024, seven months after the seizures discussed above, the Onslow Sheriff charged employees of Plaintiffs' stores and approximately 15 others with criminal offenses related to the possession and sale of lawful hemp products.

28. In response to these illegal raids, seizures and arrests, Plaintiffs bring this lawsuit seeking damages and permanent injunctive relief to protect their Constitutional rights to operate a business and to be free from illegal harassment, search, seizure, and prosecution.

## **JURISDICTION**

29. This Court has original subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) because claims asserted by Plaintiffs arise under the laws of the United States and seek redress for rights guaranteed by the United States Constitution and deprived under color of state law.

30. Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any and all North Carolina state law claims and causes of action which derive from the same nucleus of

7

operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

**VENUE**

31. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

**PARTIES**

32. Defendant Christopher Thomas ("Sheriff Thomas") is the elected Sheriff of Onslow County, North Carolina, and is sued in his official capacity as the Sheriff of Onslow County. Defendant Thomas is also sued in his individual capacity for his direct involvement in the law enforcement action described herein.

33. Defendant Sheriff Thomas, had, at the time of the unlawful arrests and seizures, waived governmental or sovereign immunity from the state law tort claims in this case pursuant to N.C.G.S. § 153A-435, either by participating in a government risk pool or through purchasing commercial insurance that will indemnify him and his agents for any judgment against him or his agents named in this action. Defendant Sheriff Thomas has also waived immunity for the independent reason that he purchased an official bond.

34. Defendant The Ohio Casualty Insurance Company, as surety for the Sheriff of Onslow County, is named as a party to this action as the entity from whom Defendant Sheriff Thomas purchased a surety bond

8

pursuant to N.C.G.S. §§ 58-76-5 and 162-8. Because Sheriff Thomas is covered by this surety bond, he has waived immunity.

35. Defendant Jay Floyd is a Lieutenant for the Onslow County Sheriff's Office.

36. Defendant Rubin Jimenez is a Sergeant for the Onslow County Sheriff's Office.

37. Plaintiff Shelly Chambers (hereinafter referred to as the "Saleh Estate") is the duly appointed Administrator of the Estate of Muammer Saleh. Muammer Saleh passed away on or about January 22, 2025.

38. Plaintiff Hubert Tobacco, Inc is a corporation doing business in Onslow County. Mr. Saleh was a partial owner of Hubert Tobacco, Inc.

## **FACTS**

**Plaintiff Saleh Estate**

39. Muammer Saleh was a resident of Onslow County.

40. On November 8, 2024, at approximately 8:30 a.m. Onslow County Sheriff's deputies arrived at Mr. Saleh's home.

41. The deputies were directed and supervised by Onslow County Sgt. Rubin Jimenez.

42. The deputies had warrants for and pictures of individuals they intended to arrest that day for sale of hemp product.

9

43. The deputies did not have a picture of Mr. Saleh or a warrant for his arrest.

44. At the time the deputies arrived, Mr. Saleh was wearing only a towel around his waist.

45. As he opened the door, the deputies, under the direction of Sgt. Jimenez, immediately handcuffed Mr. Saleh.

46. The deputies then took Mr. Saleh to his bedroom and forced him to undress in front of them.

47. The deputies then asked for his identification.

48. Mr. Saleh provided the deputies with his identification.

49. He was then forced to remain handcuffed for approximately 30 minutes.

50. The deputies then returned to his house, removed the handcuffs, and left.

51. Mr. Saleh was never charged with any offense.

**Plaintiff Hubert Tobacco**

52. Plaintiff Hubert Tobacco is a store located in Onslow County.

53. On April 3, 2024, Onslow County Sheriff's deputies raided Hubert Tobacco.

54. The raid and seizure were personally orchestrated and led by Onslow County Sheriff Chris Thomas and Lt. Jay Floyd.

55. Prior to the raid, Onslow County Sheriff's deputies visited the store and observed hemp products for sale. At that time, the deputies were aware that the hemp products were purchased from national wholesalers, that the products were marked as legal under federal and state law, and that the products were accompanied by COAs which proved the products tested under the lawful limit for delta-9 THC.

56. Still, on April 3, 2024, the Onslow County Sheriff's Office seized approximately $3,000 in cash and approximately $20,000 worth of lawful hemp products from Hubert Tobacco.

57. Two months later, Lt. Floyd stated that the goal was to shut down Plaintiffs' lawful businesses and "run them out" of town.

58. On or about June 17, 2024, undersigned counsel wrote Sheriff Thomas and Lt. Floyd and explained that, because Plaintiffs relied on the wholesalers' representations of the legality of the products—including the markings on the products and the COAs proving the products tested below the lawful limit—the Sheriff's Office had no evidence that Plaintiffs intended to sell or possess any unlawful substance. As a result, the Sheriff's office lacked probable cause to charge Plaintiffs with any crimes or to seize their hemp products.

59. Counsel further explained that intentionally "shutting down" Plaintiffs' businesses would violate our state constitution's "fruits of their labor" provision.

60. Plaintiffs, on October 15, 2024, requested that the Sheriff's office return the lawful hemp products, or produce test results proving that the products had in fact tested over the legal limit.

61. Defendants, to this day, have still not returned any hemp products to Plaintiffs, nor have they produced test results proving that the products tested over the legal limit.

62. On November 8, 2024, Onslow County Sheriff's Deputies, at the direct instruction of Sheriff Thomas and Lt. Floyd, charged employees of Hubert Tobacco with criminal offenses related to the sale and possession of hemp.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Illegal Search and Seizure in Violation of the Fourth Amendment under 42 U.S.C § 1983

63. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

64. This claim is brought by the Saleh Estate against Onslow County Sgt. Rubin Jimenez.

12

65. Sgt. Jimenez is sued under this claim in his individual capacity.

66. Sgt. Jimenez is sued for violating Mr. Saleh's constitutional rights under the Fourth Amendment and is liable for damages under 42 U.S.C § 1983.

67. On November 8, 2024, at approximately 8:30 a.m. Onslow County Sheriff's Deputies arrived at Mr. Saleh's home.

68. The deputies were directed and supervised by Onslow County Sgt. Rubin Jimenez.

69. The deputies had warrants for and pictures of individuals they intended to arrest that day for sale of hemp product.

70. The deputies did not have a picture of Mr. Saleh or a warrant for his arrest.

71. Still, the deputies, at Sgt. Jimenez's instructions, seized and handcuffed Mr. Saleh outside his home.

72. The deputies then entered his home without a warrant or consent.

73. The deputies then took Mr. Saleh to his bedroom and forced him to undress in front of them.

74. The deputies then asked for his identification.

75. Mr. Saleh provided the deputies with his identification.

76. He was then forced to remain handcuffed for approximately 30 minutes.

13

77. The deputies then removed his handcuffs and left.

78. Muammer Saleh was never charged with any offense.

79. As a direct and proximate result of these officers' acts, Mr. Saleh was illegally detained and handcuffed, and his home was illegally entered, causing the injuries and damages described herein.

**SECOND CLAIM FOR RELIEF**
**Illegal Search and Seizure in Violation of the Fourth Amendment under 42 U.S.C § 1983**

80. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

81. This claim is brought by Plaintiffs Hubert Tobacco and the Saleh Estate against Onslow County Sheriff Chris Thomas and Lt. Jay Floyd.

82. Sheriff Chris Thomas is sued under this claim in his official capacity as well as his individual capacity.

83. Lt. Floyd is sued in his individual capacity.

84. Sheriff Thomas and Lt. Floyd are sued for violating Plaintiffs' constitutional rights under the Fourth Amendment to be free from illegal search and seizure and are liable for damages under 42 U.S.C § 1983.

85. On April 3, 2024, Onslow County Sheriff's deputies raided Hubert Tobacco.

86. Prior to the raid, Onslow County Sheriff's deputies visited the store and observed hemp products for sale.

87. The deputies were aware that the hemp products were purchased from national wholesalers, that the products were marked as legal under federal and state law, and that the products were accompanied by COAs which proved the product tested under the lawful limit for delta-9 THC.

88. Still, on April 3, 2024, the Onslow County Sheriff's Office seized approximately $3,000 in cash and approximately $20,000 worth of lawful hemp products from Hubert Tobacco.

89. The raid and seizure were personally orchestrated and led by Onslow County Sheriff Chris Thomas and Lt. Jay Floyd.

90. As a direct and proximate result of these officers' acts, Hubert Tobacco was illegally entered, ransacked, and left in disarray, causing the injuries and damages described herein.

## THIRD CLAIM FOR RELIEF
## Violation of Art. I §§ 1 and 19 of the North Carolina Constitution ("Fruits of Their Own Labor")

91. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

15

92. This claim is brought by the Saleh Estate and Hubert Tobacco against Sheriff Thomas and Lt. Floyd, who are sued under this claim in their official capacities.

93. Section 1 of the North Carolina Constitution declares that North Carolinians are entitled to "the enjoyment of the fruits of their own labor." And Section 19 provides that no North Carolinian will be "deprived of his life, liberty, or property, but by the law of the land."

94. Together, these provisions protect "engaging in any legitimate business, occupation, or trade" unless "the promotion or protection of the public health, morals, order, or safety, or the general welfare makes [burdensome state action] reasonably necessary." *Kinsley v. Ace Speedway Racing, Ltd.*, 386 N.C. 418, 424, 904 S.E.2d 720, 726 (2024).

95. Action that interferes with a "legitimate business" is therefore unconstitutional unless it (1) serves a "proper governmental purpose" (2) by way of "reasonable means." *Id.*

96. Onslow County Sheriff's employees, including Sheriff Thomas and Lt. Floyd, expressly, arbitrarily, and without legal justification sought to force Plaintiffs to close their business and attempted to (in their own words) run them "out of town."

97. Defendants were aware that Plaintiffs had purchased lawful hemp products from national wholesalers, that the products were marked as

16

legal under federal and state law, and that the products were accompanied by COAs which proved the products tested under the lawful limit.

98. For years, Plaintiffs sold lawful hemp products without fear of enforcement or retribution by Defendants.

99. Without warning, on April 3, 2024, Defendants raided Plaintiffs' store and seized thousands of dollars' worth of cash and lawful hemp products.

100. The Defendants targeted Plaintiffs' business, as well as other individuals of Middle Eastern descent, while permitting other stores in Onslow County to continue to sell the very same delta-9 hemp products that were seized from Plaintiffs' store.

101. For example, Goode Hemp, which is located in Onslow County and is owned by two Caucasian individuals, who are not of Middle Eastern descent, continues to sell the very same delta-9 hemp products that were seized from Plaintiffs' store. The below screenshot of hemp

17

products for sale at Goode Hemp was taken on July 12, 2025.



Lemon Cherry Gelato - Hybrid THCA
$15.25 / g

Animal Cookies THCA - Hybrid
$13.25 / g

102. Two months after these raids, Onslow Sheriff's office Lt. Jay Floyd, who helped lead the raids, stated that the goal was to shut down Plaintiffs' lawful business and "run them out" of town.

103. Lt. Floyd stated that any hemp products that contained multiple types of cannabinoids would be seized—without any attempt to determine if the various combined ingredients were lawful.

104. Lt. Floyd further stated that all hemp products, regardless of COAs or packaging identifying the product as legal, were "too close to the line" of legality and would continue to be seized.

105. Undersigned counsel responded to Lt. Floyd in writing (Ex. A, Onslow County Letter) and explained that Plaintiffs were selling hemp, a lawful product under federal and state law.

106. Counsel explained that because Plaintiffs relied on the wholesalers' representations of the legality of the products—including the markings on the products and the COAs proving the products tested below the lawful limit—the Sheriff's Office had no evidence that Plaintiffs intended to sell or possess any unlawful substance. As a result, the Sheriff's office lacked probable cause to charge Plaintiffs with any crimes or to seize their hemp products.

107. Counsel further explained that intentionally "shutting down" Plaintiffs' business would violate our state constitution's "fruits of their labor" provision.

108. Plaintiffs, on October 15, 2024, requested that the Onslow County Sheriff's office return the lawful hemp products, or produce test results proving that the products had in fact tested over the legal limit.

109. Defendants, to this day, have still not returned any of Plaintiffs' hemp products, nor have they produced test results proving that the products tested over the legal limit.

19

110. Instead, Defendants have continued to send Sheriff's deputies to monitor Plaintiffs' store and have insisted that they will continue to enforce against Plaintiffs if they sell hemp products.

111. Through a persistent pattern of harassment, unlawful seizures and unlawful arrests, Defendants have attempted to force Plaintiffs to cease selling lawful hemp products—permanently damaging their business—while permitting other stores in the County to sell the exact same products that were seized from Plaintiffs' store.

112. As a direct and proximate result of the officers' conduct, Plaintiffs have been forced to stop selling lawful hemp products, resulting in significant pecuniary damages.

113. Plaintiffs do not have an adequate alternative state remedy, and therefore, enjoy a direct cause of action for the violation of their rights as guaranteed by the North Carolina Constitution.

**FOURTH CLAIM FOR RELIEF**
**Violation of Art. I § 19 of the North Carolina Constitution**
**("Selective Enforcement")**

114. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

115. This claim is brought by the Saleh Estate and Hubert Tobacco against Sheriff Thomas and Lt. Floyd, who are sued under this claim in their official capacities.

116. Article I, section 19 of the North Carolina Constitution provides that "[n]o person shall be denied the equal protection of the laws[.]" That provision bars enforcement actions that are "motivated by a discriminatory purpose and ha[ve] a discriminatory effect." *Kinsley*, 386 N.C. at 428, 904 S.E.2d at 728-29.

117. A "discriminatory purpose" is one based on an "unjustifiable standard" or "arbitrary classification" like "race, religion, or the exercise of the claimant's constitutional rights." *Id.*

118. A "discriminatory effect" results when a claimant "has been singled out and treated differently" compared "to persons similarly situated." *Id.*

119. The Defendants violated Plaintiffs' equal-protection rights when they singled them out for enforcement and prosecution based on:

   a.  Their Middle Eastern heritage; *and/or*

   b.  A desire to prevent them from exercising their constitutional rights; specifically their "right to earn a living" under the state's "fruits-of-their-labor" clause.

120. The Defendants knew that other, similarly situated businesses were—and are still—selling identical hemp products, but chose to single out Plaintiffs' business.

121. The Defendants targeted Plaintiffs' business, as well as other individuals of Middle Eastern descent, while permitting other stores in Onslow County to continue to sell the very same delta-9 hemp products that were seized from Plaintiffs' store.

122. As a direct and proximate result of Defendants' conduct, Plaintiffs have been forced to stop selling lawful hemp products, resulting in Plaintiffs' pecuniary damages.

123. Plaintiffs do not have an adequate alternative state remedy, and therefore, enjoy a direct cause of action for the violation of their rights as guaranteed by the North Carolina Constitution.

**FIFTH CLAIM FOR RELIEF**
**Common Law Negligence**

124. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

125. This claim is brought by Plaintiffs Hubert Tobacco and the Saleh Estate against Sheriff Thomas, Lt. Floyd, and Sgt. Jimenez, who are

sued under this claim in their official capacities as well as their individual capacities based on their own conduct.

126. Sheriff Chris Thomas, on information and belief, has waived immunity for this claim on behalf of the Sheriff's Office and its officers acting in their official capacities.

127. Sheriff Thomas, through his officers, had the following duties:

    a.      to ensure that stores were not unlawfully searched;

    b.      to ensure that product and cash was not unlawfully seized;

    c.      to ensure that only reliable sources of evidence were used in criminal prosecutions;

    d.      to ensure that only reliable and accurate tests were used when examining the legality of hemp product;

    e.      to not omit material evidence (including exculpatory evidence) from magistrates, district attorneys and the grand jury;

    f.      to exercise reasonable care when engaging in criminal investigations; and

    g.      to include accurate information in reports describing evidence in their possession.

128. Sheriff Thomas, through his officers, was negligent and breached duties owed to Plaintiffs in the following respects:

a. The officers wrongfully caused Plaintiffs' stores to be unlawfully searched and their product to be unlawfully seized;

b. The officers omitted key information to the magistrate and district attorney during the course of their investigation and when seeking to press charges;

c. The officers used a gas chromatography test which may have converted lawful delta-9 hemp product into unlawful product; and

d. In other respects, to be proved through discovery and at trial.

129. Defendant Sheriff Thomas, by and through his agents, was negligent and breached each of the duties outlined above, resulting in Plaintiffs being deprived of their right to be free from wrongful arrest and prosecution.

130. Sheriff Thomas, as the principal for his agents, including Lt. Floyd, and Sgt. Jimenez, are responsible under *respondeat superior* for the injuries caused by the acts and omissions alleged herein.

131. The defendant officers acted within the course and scope of their employment in the acts and omissions alleged herein.

132. As a direct and proximate result of the negligence of the Sheriff Thomas, through his officers, Plaintiffs were wrongfully arrested,

24

detained and prosecuted and suffered physical, emotional and pecuniary damages.

**SIXTH CLAIM FOR RELIEF**
**Common Law Trespass**

133. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

134. This claim is brought by the Saleh Estate against Sgt. Jimenez.

135. Sgt. Jimenez is sued under this claim in his individual capacity.

136. On November 8, 2024, at approximately 8:30 a.m., Onslow County Sheriff's Deputies arrived at Mr. Saleh's home.

137. The deputies were directed and supervised by Onslow County Sgt. Rubin Jimenez.

138. Without authorization or cause, the deputies entered Mr. Saleh's home.

139. Upon their arrival, the deputies, under the direction of Sgt. Jimenez, immediately handcuffed Mr. Saleh. Mr. Saleh was forced to remain handcuffed for approximately 30 minutes.

140. In entering Mr. Saleh's home without authorization or cause, Sgt. Jimenez acted outside the scope of his duty and with malice.

25

141. As a direct and proximate result of the trespass by Sgt. Jimenez, Plaintiff was dispossessed of the use of his real property and suffered the damages described herein.

### SEVENTH CLAIM FOR RELIEF
### Common Law Trespass to Chattels

142. This claim is brought by Plaintiff Hubert Tobacco against Sheriff Thomas and Lt. Floyd.

143. Sheriff Thomas is sued under this claim in his official and individual capacity.

144. Sheriff Thomas, on information and belief, has waived immunity for this claim on behalf of the Sheriff's Office and its officers.

145. Lt. Floyd is sued under this claim in his individual capacity.

146. On April 3, 2024, the Onslow County Sheriff's Office illegally entered Hubert Tobacco and, without authorization or legal authority, seized approximately $3,000 in cash and approximately $20,000 worth of lawful hemp product.

147. This raid and seizure was orchestrated and led by Sheriff Thomas and Lt. Floyd.

148. Defendants' unauthorized interference with Hubert Tobacco's property was done outside the scope of their duty and with malice.

26

149. As a direct and proximate result of the trespass to chattels by Defendants, Plaintiffs were dispossessed of the use of their personal property and suffered the damages described herein.

**EIGHTH CLAIM FOR RELIEF**
**Injunctive Relief Against Onslow County Sheriff Chris Thomas**

150. Plaintiffs re-allege and incorporate the preceding paragraphs as if set forth herein.

151. The Saleh Estate and Hubert Tobacco bring this claim for permanent injunctive relief against Onslow County Sheriff Chris Thomas. Sheriff Thomas is sued for injunctive relief in his official capacity.

152. As alleged herein, Plaintiffs have suffered and will continue to suffer unconstitutional deprivations of their liberty interests caused by Sheriff Thomas's policies and procedures related to lawful hemp products.

153. Specifically, Sheriff Thomas has instituted a policy of seizing lawful hemp products and arresting and charging individuals for the possession or sale of lawful hemp products.

154. Moreover, when testing lawful hemp products, Sheriff Thomas, and the employees of the Onslow County Sheriff's Office, are using a process known as "gas chromatography" to test hemp products.

27

155. During the gas-chromatography process, the product being tested is heated to a temperature that changes its molecular structure and, as a result, increases the amount of THC present.

156. In other words, Sheriff Thomas's testing method risks changing a legal product into an illegal one.

157. By comparison, "liquid chromatography" tests products in the state they are bought and sold in.

158. "Liquid chromatography" testing is reliable, cost-effective, and readily available. The Onslow County Sheriff's Office is aware of this testing method, but refuses to use it.

159. Plaintiffs are eager to continue selling lawful hemp products, but are prevented from doing so by the Onslow Sheriff.

160. The deprivations of liberty interests suffered by Plaintiffs constitute irreparable injury such that remedies available at law, including monetary damages, are inadequate to fully compensate for such injury.

161. Sheriff Thomas's unconstitutional policies are a continuing policy and practice and therefore subject Plaintiffs, as well as the public in North Carolina at large, to ongoing risk of deprivations of their constitutional rights.

162. This ongoing risk is evidenced by the fact that Lt. Floyd has stated that the Onslow Sheriff's Office will continue to seize hemp products, arrest

individuals for selling lawful hemp products, and test the products using gas chromatography.

163. Considering the balance of hardships between the parties, and Sheriff Thomas's indifference towards the egregious violations of Plaintiffs' liberty interests, a permanent injunction against the Sheriff Thomas is warranted.

164. Specifically, the permanent injunction should require Sheriff Thomas and his employees to immediately:

a. Stop seizing lawful hemp products;

b. Stop arresting individuals for selling or possessing lawful hemp products;

c. And to test hemp products only using liquid chromatography, or another method that does not alter the products' THC content.

165. Such a permanent injunction would serve the public interest by preventing Sheriff Thomas from continuing to subject Plaintiffs and the public to unconstitutional deprivations of liberty.

## NINTH CLAIM FOR RELIEF
### *Respondeat Superior*

166. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

167. This claim is brought by the Saleh Estate and Hubert Tobacco against Sheriff Thomas, Lt. Floyd, and Sgt. Jimenez, who are sued under this claim in their official capacities.

168. In committing the acts alleged in the previous paragraphs, these defendants were employees or agents of the Onslow County Sheriff, acting within the scope of their employment.

169. Sheriff Thomas, on information and belief, has waived immunity for this claim on behalf officers acting in their official capacities.

170. Therefore, Sheriff Thomas is liable as principal for the torts committed by its agents in the course and scope of their employment under the doctrine of *respondeat superior*.

**TENTH CLAIM FOR RELIEF**
**Indemnification**

171. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

172. This claim is brought by the Saleh Estate and Hubert Tobacco against Sheriff Thomas, Lt. Floyd, and Deputy Jimenez, who are sued under this claim in their individual and official capacities.

173. Sheriff Thomas is permitted by state law and, on information and belief, has elected to pay any final judgment against an employee that

30

results from an act done or omission made in the scope and course of his or her employment with the Onslow County Sheriff's Office.

174. In committing the acts alleged in this Complaint, the named officer defendants were at all times employees of the Onslow County Sheriff's Office and acting within the course and scope of their employment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and order relief as follows:

A.  Compensatory damages against all Defendants, jointly and severally;

B.  Punitive damages against the individual Defendants, jointly and severally;

C.  Pre-judgment and post-judgment interest and recovery of costs, as well as reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 and any other applicable laws;

D.  Injunctive relief against the Onslow County Sheriff and Moore County Sheriff;

E.  Any other and further relief the Court deems equitable and just.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury of all issues in this matter so triable pursuant to Federal Rule of Civil Procedure 38(b).

31

Respectfully submitted this the 14th day of July 2025.

/s/ Abraham Rubert-Schewel
Abraham Rubert-Schewel (NCSB #: 56863)
Email: schewel@tinfulton.com
TIN FULTON WALKER & OWEN PLLC
119 Orange Street, Floor 2
Durham, NC 27701
Telephone: (919) 307-8400

*Counsel for Plaintiffs*

Case 7:24-cv-01101-M-RJ    Document 25    Filed 07/14/25    Page 32 of 32